IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MASTODON, LLC.

    Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Civil Action No.: 1:20-cv-07746

Judge Mary M. Rowland
Magistrate Judge Sheila M. Finnegan

## DECLARATION OF BILL KELLIHER

I, Bill Kelliher, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am a member of MASTODON, LLC which is the owner of the trademark registration for the MASTODON Trademark including U.S. Trademark Registration No. 3,267,852. I am musician in the band known as MASTODON. I am also involved in the band's fan products from the printing/manufacturing, online ordering, to packaging shipping and customer service. I make this declaration from matters within my own knowledge save where otherwise stated.

3. MASTODON ("The Band") was formed in 2000, and has released seven studio albums, as well as a number of other releases. The Band's 2002 debut album, *Remission*, garnered significant critical acclaim for its unique sound. Mastodon's second full-length release, *Leviathan*, is a concept album based on the novel *Moby-Dick* by Herman Melville. Three magazines awarded

1

the record Album of the Year in 2004. The song "Colony of Birchmen" from The Band's third album (released in 2006), *Blood Mountain*, was nominated for a Grammy Award for Best Metal Performance in 2007. *Blood Mountain* was followed in 2009 by *Crack the Skye*, and in 2011 by *The Hunter*, which debuted at No. 10 on the Billboard 200 chart and achieved major commercial success in the United States.

4. An official source of MASTODON authentic products is as follows:



https://shop.mastodonrocks.com

5. MASTODON, LLC is the owner of the trademark registration for the MASTODON trademark including U.S. Trademark Registration No. 3,267,852.

6. The MASTODON Trademark is valid, subsisting, and in full force and effect. A true and correct copy of the federal trademark registration certificate for the above MASTODON Trademark is attached hereto as Exhibit 1.

7. The MASTODON Trademark is distinctive and identifies the merchandise as

goods from The Band.

8. The registration for the MASTODON Trademark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the MASTODON Trademark. The MASTODON Trademark has been continuously used and never abandoned.

9. Substantial time, money, and other resources have been expended in establishing, developing, advertising, and otherwise promoting the MASTODON brand and Trademark. As a result, products bearing the MASTODON Trademark are recognized and exclusively associated by consumers, the public, and the trade as being products sourced from The Band. Online sales of fan products constitute a significant part of The Band's business.

10. The success of the MASTODON brand has resulted in its significant counterfeiting. Consequently, MASTODON is implementing an anti-counterfeiting program that is investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Numerous marketplace listings on platforms such as WISH.com and Aliexpress, including the fully interactive commercial Internet stores operating under the Online Marketplace Accounts identified in Schedule A which is attached to the Complaint (collectively, the "Defendant Internet Stores") have been identified, which were offering for sale, selling, and importing counterfeit products in connection with counterfeit versions of the federally registered MASTODON Trademark (the "Counterfeit MASTODON Products") to consumers in this Judicial District and the United States. Defendants have persisted in creating the Defendant Internet Stores despite prior enforcement efforts.

11. I perform, supervise, and/or direct investigations related to Internet-based infringement of the MASTODON Trademark. Our investigation shows that Defendants are using the Defendant Internet Stores to sell Counterfeit MASTODON Products from foreign countries

such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the Defendant Internet Stores and determined that Counterfeit MASTODON Products were being offered for sale to the United States, including Illinois. This conclusion was reached through visual inspection of the products listed for sale on the website, the price at which the Counterfeit MASTODON Products were offered for sale, other features commonly associated with websites selling counterfeit products, because Defendants offered shipping to the United States, including Illinois, and because Defendants and their websites do not conduct business with me and do not have the right or authority to use the MASTODON Trademark for any reason. True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed are attached as <u>Exhibit 2.</u>

12. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores or wholesalers selling genuine MASTODON Products. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal. The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. Plaintiff has not licensed or authorized Defendants to use the MASTODON Trademark, and none of the Defendants are authorized retailers of genuine MASTODON Products.

13. Upon information and belief, Defendants also deceive unknowing consumers

by using the MASTODON Trademark without authorization within the content, text, and/or meta tags of their web sites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MASTODON Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine MASTODON Products. Further, Defendants utilize similar illegitimate SEO tactics to propel new Defendant Internet Stores to the top of search results after others are shut down.

14. Defendants often go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

15. Even though Defendants often operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective Defendant Internet Stores. In addition, Counterfeit MASTODON Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit MASTODON Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same

store name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, lack of contact information, identically or similarly priced similar hosting services, similar name servers, and the use of the same text and images.

16. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit.

17. Counterfeiters such as Defendants typically operate multiple credit card merchant accounts as well as Amazon and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of my enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

18. Monetary damages alone cannot provide adequate compensation for the ongoing infringement because monetary damages fail to address the loss of control of and damage to MASTODON's reputation and the goodwill associated with the brand. Furthermore, monetary damages are difficult, if not impossible, to completely ascertain due to the inability to fully quantify the monetary damage caused to MASTODON's reputation and the brand's goodwill by the acts of infringement.

19. The Band's goodwill and reputation are irreparably damaged when the MASTODON Trademark is used on goods not authorized, produced, or manufactured by MASTODON. Moreover, consumer brand confidence is damaged, which can result in a loss of

future sales and market share. The extent of harm to our band's reputation and brand's goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

20. The Band is further irreparably harmed by the unauthorized use of the MASTODON Trademark because counterfeiters take away the ability to control the nature and quality of products bearing the MASTODON Trademark. Loss of quality control over goods bearing the MASTODON Trademark and, in turn, loss of control over our reputation is neither calculable nor precisely compensable.

21. The sale of Counterfeit MASTODON Products bearing the MASTODON Trademark also causes consumer confusion, which weakens MASTODON's brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit MASTODON Products they have purchased originated from MASTODON will come to believe that MASTODON offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine MASTODON Products, resulting in a loss or undermining of our band's reputation and goodwill.

22. The Band is further irreparably damaged due to a loss in exclusivity. The MASTODON Products are meant to be exclusive. Our extensive marketing and distribution of MASTODON Products as part of our music, performances, and other marketing activities have been aimed at growing and sustaining sales of MASTODON Products. The MASTODON Trademark is distinctive and signifies to consumers that the products originate from MASTODON and are manufactured to MASTODON's high-quality standards. When counterfeiters use the MASTODON Trademark on goods without MASTODON's authorization, the exclusivity of MASTODON's products, as well as MASTODON's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

...

23. The Band will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 28, 2020.


Bill Kelliher