Exhibit 1



# White Paper on Remixes, First Sale, and Statutory Damages

Copyright Policy, Creativity, and Innovation
in the Digital Economy

THE DEPARTMENT OF COMMERCE
INTERNET POLICY TASK FORCE

January 2016

extraordinarily large.[574] These levels of awards could potentially have a chilling effect on investment and innovation. Moreover, the "per work" calculation makes less sense in the context of secondary liability than in cases involving direct infringement. Where an online service provider enables thousands or even millions of users to infringe by offering many copyrighted works to the world at large, there is a more attenuated connection between the service provider's actions and the number of works that are infringed; typically, the service provider will have no control over or knowledge of the number of works that are infringed.

At the same time, the Task Force acknowledges that the potential for harm to individual creators and the creative industries caused by infringement using mass online services is considerable. And while some chilling effect may result from potentially massive damages, the scope of any such chilling effect is unclear. Although some investment may be deterred by uncertain legal environments and litigation over the issue of infringement may have bankrupted some companies, there is little concrete evidence of how much lawful innovation has actually been chilled. Even assuming a reduction in innovation and investment, it is not clear that this was solely the result of the potential magnitude of statutory damages awards—as opposed to potential liability itself, litigation costs or the threat of other remedies such as injunctive relief. And it may well be that the risk of statutory damages has had a positive effect in deterring innovators from engaging in conduct likely to be infringing, or encouraging investment in other innovation instead.

After careful consideration of all of these aspects, the Task Force concludes that an adjustment in the law is advisable. We recommend that section 504 be amended to provide that, in cases of nonwillful secondary liability by online services involving large numbers of infringed works, courts shall have the discretion to depart from the strict "per work" calculus and adjust the overall award to an amount that appropriately reflects the purposes set forth in the statutory factors we have proposed above.[575] This recommendation goes further than the leeway permitted under factor 7 described above, since without this additional change the courts are still bound to the minimum statutory per work amounts. When a court must multiply this minimum by a very large number of copyrighted works, it may not be possible to avoid an excessive outcome.[576]

Congress should consider whether to set a minimum number of infringed works beyond which an additional per-work award would not be mandatory, or whether that number should be determined in each case by the court.[577] Courts would not be required to abandon the strict "per work" method of calculation, but instead would have the discretion to do so if that calculus would lead to a disproportionate overall award. Nor should the enactment of such a provision be read to mean that this is the favored result in cases involving more than the threshold amount.

---

[574] *See* discussion *above* at note 482.

[575] *See above* Part C.2.a.iv (Adjusting for Multiple Works), pp. 93-94 (discussing factor 7).

[576] *See* discussion *above* at note 482.

[577] The per-work minimum would not be suspended with respect to all infringed works in the case, but only with respect to those works beyond the minimum number of works necessary to permit application of the alternative calculation method.It may be worthwhile to conduct a study to determine what the minimum number of works should be.

The Task Force is confident that the courts will be in the best position to determine whether, in each case, the alternative approach should be used.[578]

This flexibility should not, however, be available in cases involving willful infringement or intentional inducement of infringement.[579] These circumstances present the clearest need for deterrence and punishment. Concerns that high statutory damages awards may have a chilling effect on companies engaging in technological innovation are premised on the proposition that such companies should be encouraged to innovate and we should not unduly penalize those that inadvertently cross the line. However, such concerns do not apply with respect to those who infringe willfully, or actively induce infringement by those who use their services or products. In the words of the Supreme Court, "the inducement rule premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise."[580]

d. Establish a Streamlined Procedure for Adjudicating Small Claims

Finally, the Task Force supports the creation of a streamlined procedure for adjudicating small claims of copyright infringement and believes that further consideration should be given to the proposal of the Copyright Office to create a small claims tribunal.[581] The proposal would provide for a cap on awards of statutory and actual damages, limited discovery and counterclaims, assertion of all relevant defenses (including fair use), optional attorney representation, and awards of costs and fees against frivolous litigants.[582] Among other features of the system suggested by the Copyright Office, participation in small claims proceedings would be voluntary and would be administered by a centralized tribunal in a single location.[583] One recommendation of particular relevance to our review here is that the Copyright Office proposal would cap statutory damages awards on both a per work and per case basis.[584]

---

[578] We recognize that in some cases, online services facing claims of secondary liability for non-willful large-scale infringement may fall within one of the safe harbors set forth in 17 U.S.C. § 512.

[579] *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

[580] *Id.* at 937.

[581] COPYRIGHT OFFICE SMALL CLAIMS REPORT, note 468 *above*. The Small Claims Report was issued after the Green Paper.

[582] *Id.* at 4, 109-12, 117, 119-20. The Small Claims Report also detailed the current copyright enforcement system, discussed constitutional and federal procedure issues, analyzed state small claims courts and other enforcement bodies, and outlined stakeholder proposals and its recommendations to support the establishment of a small claims tribunal. *Id.* at Sections III-IV and *passim*. In the Green Paper, the Task Force described the then-ongoing study and observed that an alternative to the federal courts could be useful for certain online infringement claims. *See* Green Paper at 58.

[583] *See* Small Claims Report at 97-99, 102-03. While the Task Force agrees that a small claims procedure with all of these features is desirable, we do not necessarily endorse each and every detail of the Copyright Office proposal, nor do we offer a particular legislative proposal at this time. However, we do note that any small claims system should include safeguards to prevent abuse.

[584] *Id.* at 109-112 (discussing stakeholder proposals for the range of damages and recommending a $15,000 per work cap and a cap of $30,000 for all damages in a single case involving a registered work, and half those amounts for

A small claims procedure for infringement claims of relatively low economic value would provide individual and smaller rights holders an alternative mechanism to enforce their rights if they lack the resources to litigate or employ another remedy under the current copyright system.[585] Given a damage cap, alleged infringers in the small claims process would not face the highest levels of statutory damages available under the current system. Other aspects of a small claims process could also help balance the interests of claimants and alleged infringers.

After considering the Copyright Office proposal in light of the comments the Task Force received,[586] we believe that a small claims process should be established to resolve infringement claims involving, inter alia, online file-sharing.[587] Many copyright owners would be willing to trade the potential for higher damages in exchange for lower costs and simpler, more expedited procedures, and defendants would also be attracted to a less costly forum where the exposure to damages is limited.[588] This could also help diminish the risk of disproportionate levels of statutory damages against individual infringers. Both parties would ultimately benefit from a small claims process that aims to streamline copyright litigation while reducing the potential costs for everyone involved.

---

late-registered works); *see also* notes 50-51, 55-56 & 62 and accompanying text, *above* (presenting stakeholder views on capping statutory damages).

[585] We note that if a small claims tribunal can adjudicate file-sharing and other types of claims, it could become a useful venue for rights holders to engage in direct enforcement actions against alleged individual infringers.

[586] *See above,* pp. 77, Part B.1.d (Solutions Proposed by Stakeholders).

[587] A small claims tribunal is not likely, however, to have an appreciable impact on large scale secondary liability cases against online services given the magnitude of potential damages. Although our focus is on file-sharing, a small claims tribunal could also be useful in other infringement cases.

[588] *See* Small Claims Report at 24 ("Copyright owners whose works are infringed often are deterred from enforcing their rights due to the burden and expense of pursuing litigation in the federal system. Especially in the case of lower-value copyright claims, the potential for monetary recovery can be quickly overcome by the costs of discovery, motion practice, and other litigation expenses."); *see also* Green Paper at 58 (noting that a small claims procedure could provide an alternate remedy for rights holders lacking the resources to effectively use the DMCA takedown mechanism).